UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SERAFINO CARDINALI,

                              Plaintiff,

                                                      Case # 14-CV-6558-FPG

v.                                                    DECISION & ORDER

COUNTY OF MONROE,

                              Defendant.


## INTRODUCTION

In this employment discrimination case, Plaintiff Serafino Cardinali ("Plaintiff") alleges he was unlawfully discriminated against by the County of Monroe ("Defendant") when he was forced to retire early from his job as an engineer for the Monroe County Department of Environmental Services. ECF No. 1. Specifically, Plaintiff alleges he was discriminated against (1) based upon his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, and Rule XXVII of the Monroe County Civil Service Commission; and (2) based upon his refusal to contribute money to the Monroe County Republican Party, in violation of the New York State Civil Service Law, N.Y. Civ. Serv. Law § 107. *Id.*

Presently before the Court is Defendant's Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. ECF No. 13. For the reasons stated below, Defendant's Motion is granted in part and denied in part.

## BACKGROUND[1]

Plaintiff, who was born on September 24, 1951, was employed as an engineer with Monroe County from 1993 until December 2013. At all relevant times, Plaintiff was assigned to the engineering division of the Monroe County Department of Environmental Services. His last position was as an Associate Engineer.

On at least two occasions, while at work, Plaintiff was asked by his superiors to contribute to the local Republican Party by purchasing dinner tickets to the Monroe County Republican Ball. These tickets cost "at least $250, usually $300." On one of these occasions, approximately 8 years ago, superior Mike Garland ("Garland") called Plaintiff into his office and asked Plaintiff to purchase a ticket to the Monroe County Republican Ball for $300. Plaintiff "dutifully purchased the ticket because he felt he had no choice." Plaintiff continued to buy these tickets on an annual basis "to assure he would be treated fairly," but never actually attended any of the events. In the last 13 years, Plaintiff estimates that he purchased 8 tickets at a total cost of $2,300. Plaintiff eventually[2] stopped purchasing tickets because he "thought that he was safe from political influence."

When the "Robutrad scandal" hit the Rochester area in 2009, Plaintiff was asked by investigators about Robutrad and if Plaintiff knew of "any other wrongdoing or corruption." Although Plaintiff did not know anything useful about Robutrad, he did disclose the fact that while at work he was asked to buy a $300 ticket to the Monroe County Republican Ball. Sometime thereafter, Garland allegedly told a colleague that he "didn't trust" Plaintiff due to the fact that Plaintiff had talked to investigators about the Republican Ball tickets.

On August 30, 2013, Plaintiff was advised by his supervisor Jason Kennedy ("Kennedy") that Plaintiff's position was being eliminated and that Plaintiff would be required to retire by the

---

[1]     The following allegations are taken from Plaintiff's Verified Complaint (ECF No. 1).
[2]     Plaintiff's Complaint states he stopped purchasing the tickets "about three years ago."

end of 2013.  Relying on the information and direction provided by Kennedy, Plaintiff did retire on December 2, 2013.

Following his retirement, Plaintiff learned that co-worker David Cross ("Cross") was allowed to keep his employment even though he had less seniority than Plaintiff and performs the same or similar duties as Plaintiff did.  Cross is younger than Plaintiff by approximately 20 years, and had about 13 less years of seniority than Plaintiff at the relevant time.

## LEGAL STANDARD

Under Rule 12(c) of the Federal Rules of Civil Procedure, a party may move for judgment on the pleadings after the pleadings are closed, so long as the motion is made "early enough not to delay trial." Fed. R. Civ. P. 12(c).

The analysis used to decide a motion for judgment on the pleadings is the same as the analysis used to decide a motion to dismiss under Rule 12(b)(6). *Keywell L.L.C. v. Pavilion Bldg. Installation Sys., Ltd.*, 861 F. Supp. 2d 120, 127 (W.D.N.Y. 2012).  Thus, the Court "must accept as true all of the factual allegations contained in the complaint," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007), and "draw all reasonable inferences in Plaintiff's favor." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570; *Johnson v. Rowley*, 569 F.3d 40, 44 (2d Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When deciding a motion under Rule 12(c), a court ordinarily may not rely on matters outside the pleadings unless the court treats the motion as one for summary judgment under Rule 56 and gives the parties a reasonable opportunity to present relevant evidence.  Fed. R. Civ. P. 12(d).  However, as the Second Circuit explained in *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002):

> For purposes of this rule, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991)); *see* Fed.R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint "relies heavily upon its terms and effect," which renders the document "integral" to the complaint. *Int'l Audiotext*, 62 F.3d at 72.

*Id.* at 152-53 (2d Cir. 2002).  With respect to documents that are deemed "integral" to the complaint, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document" and that "there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).  Furthermore, "where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Chambers*, 282 F.3d at 153 (quoting *Cortec*, 949 F.2d at 48) (internal quotations omitted).

Plaintiff's Complaint is therefore deemed to include the right to sue letter he received from the United States Equal Opportunity Commission ("EEOC"), which was attached to his Complaint as an exhibit.  ECF No. 1-2.

Along with its Motion for Judgment on the Pleadings, Defendant attached three exhibits: Plaintiff's EEOC Charge, the notice of claim served by Plaintiff on Monroe County on August 6, 2014, and the Deputy County Attorney's letter dated August 15, 2014 rejecting Plaintiff's notice

of claim.  ECF No. 13, Ex. A, Ex. B, Ex. C.  Because Plaintiff's Complaint references his EEOC Charge and attaches the EEOC right to sue letter, the EEOC Charge itself is deemed incorporated by reference and also integral to the Complaint.

With respect to the notice of claim served on Monroe County and the Deputy County Attorney's letter, these are documents of which Plaintiff had in his possession and had actual notice of at all times.  As discussed below, New York County Law § 52 and New York General Municipal Law § 50-i require Plaintiff to allege in his complaint that (1) he served a notice of claim on Monroe County, (2) the claim was rejected, and (3) he waited 30 days before filing suit. N.Y. County Law § 52(1); N.Y. Gen. Mun. Law § 50-i(1)(b).  Thus, even though Plaintiff's Complaint does not make these required allegations, Plaintiff's notice of claim and the letter rejecting his notice of claim were relied upon by Plaintiff in framing his complaint and are considered integral to the complaint.  It is also important to keep in mind that Plaintiff, who is represented by counsel, does not contest the accuracy, authenticity, or relevance of any of the documents put forth by Defendant.  *See* ECF No. 16.  In fact, Plaintiff refers to and cites these documents in his response to Defendant's Motion.  *Id.* at 2.  The Court will therefore consider Plaintiff's notice of claim and the Deputy County Attorney's letter in deciding Defendant's Motion.

Lastly, Plaintiff attached two exhibits to his response[3] to Defendant's Motion: Plaintiff's EEOC intake questionnaire, and an Answer and Position Statement filed by the Monroe County

---

[3]  Plaintiff's response to Defendant's Motion was styled as an "Attorney Affidavit in Opposition."  ECF No. 16.  Under Rule 7(a)(3) of the Local Rules of Civil Procedure, "[a]n affidavit must not contain legal arguments, but must contain factual and procedural background relevant to the motion it supports."  L. R. Civ. P. 7(a)(3).  Local Rule 7(a)(2)(A) requires a party opposing a motion under Rule 12 to file and serve an answering memorandum of law.  L. R. Civ. P. 7(a)(2)(A).  The first three pages of Plaintiff's "Attorney Affidavit in Opposition" contain factual background, and the rest of the response contains legal argument and analysis.  ECF No. 16.

Plaintiff argues that the Court should disregard Plaintiff's response completely because of his failure to comply with the Local Rules.  ECF No. 17, at 2-3.  However, Plaintiff's response does include both factual background and legal argument, and is sufficiently organized so that the Court can differentiate between the "affidavit" portion of the document and the "legal memorandum" portion.  In order to avoid unduly prioritizing form over substance, the Court will consider Plaintiff's response.

Department of Environmental Services ("DES") in response to Plaintiff's EEOC Charge. ECF No. 16, Ex. 1, Ex. 2. Like the EEOC Charge itself, Plaintiff's EEOC intake questionnaire is deemed integral to the Complaint because Plaintiff's Complaint makes reference to Plaintiff's EEOC Charge and attaches the EEOC right to sue letter. With respect to the DES Answer and Position Statement, which was filed in response to Plaintiff's EEOC Charge, this document does not pertain to any of the issues discussed below and the Court therefore declines to consider it at this time.

## DISCUSSION

In Defendant's Motion for Judgment on the Pleadings, Defendant raises the following arguments: (1) Plaintiff fails to state a claim for age discrimination under either the ADEA or the NYSHRL because he has not adequately alleged that he suffered an "adverse employment action"; (2) Plaintiff's state law claims must be dismissed because Plaintiff did not file a timely notice of claim with Monroe County, as required by New York County Law § 52; and (3) Plaintiff's claim under Rule XXVII of the Monroe County Civil Service Commission is "not valid." ECF No. 13-5. These arguments are addressed in turn.

## I.  Adverse Employment Action

Age discrimination claims brought pursuant to the ADEA and the NYSHRL are analyzed using the same legal framework. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 105-107 (2d Cir. 2010); *Mittl v. New York State Div. of Human Rights*, 100 N.Y.2d 326, 330 (2003). To carry his burden of establishing a *prima facie* case of age discrimination, Plaintiff must show that (1) he is a member of the protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the circumstances surrounding the action give rise to an inference of age discrimination. *Mittl*, 100 N.Y.2d at 330; *Gorzynski*, 596 F.3d at 107. Only the

third element is in dispute here;[4] Defendant argues that Plaintiff has failed to state a claim for age

discrimination under either the ADEA or the NYSHRL because he has not adequately alleged

that he suffered an "adverse employment action." ECF No. 13-5, at 5-6, 10-11.

An adverse employment action is "a materially adverse change in the terms and

conditions of employment." *Caskey v. Cty. of Ontario*, 560 F. App'x 57, 58 (2d Cir. 2014)

(quoting *Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)).

"Examples of such materially adverse changes include termination of employment, a demotion

evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits,

significantly diminished material responsibilities, or other indices unique to a particular

situation." *Id.* at 59 (internal quotation marks and ellipsis omitted); *see also Galabya v. New

York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). Even when an employer acts

indirectly, an employee may suffer an adverse employment action in the form of a "constructive

discharge." *Id.* A constructive discharge occurs when the employer "deliberately makes an

employee's working conditions so intolerable that the employee is forced into an involuntary

resignation." *Id.* (quoting *Morris v. Schroder Capital Mgmt. Int'l*, 481 F.3d 86, 89 (2d Cir.

2007)).

Defendant argues that because Plaintiff technically retired from his position, and

therefore was not actually terminated by Monroe County, he must satisfy the standard for

constructive discharge and show that his working conditions were intolerable. ECF No. 13-5, at

5-6, 10-11. But this logic rests on a distinction between being "fired" and being "explicitly told

to resign," which is untenable and has no support in the statutes or in the relevant case law.

"Where there is evidence of a clear intent on the part of the employer to dispense with the

employee's services, and where that intent is the equivalent of a declaration that the services of

---

[4]      In Defendant's Motion, Defendant concedes that Plaintiff's allegations "likely satisfy the first two prongs"
of the *prima facie* case of age discrimination. ECF No. 13-5, at 5, 10.  Because Defendant makes no argument
regarding the fourth prong, the third prong is the only one in dispute for the purpose of Defendant's Motion.

the employee will no longer be accepted, discharge is established." *Havelick v. Julius Wile Sons & Co.*, 445 F. Supp. 919, 925 (S.D.N.Y. 1978).

In *Havelick*, the plaintiff's employer requested that he take early retirement effective on a certain date and asked plaintiff to turn over his files. *Id.* at 924. Although defendants argued that plaintiff had taken voluntary early retirement under the company's pension plan, the Court in *Havelick* rejected that argument outright. *Id.* at 925 ("It is abundantly clear that plaintiff's services were terminated.").

This case is indistinguishable from *Havelick*. Plaintiff alleges that his supervisor told him he "would be required to retire by the end of 2013, due to the elimination of his position." ECF No. 1, at 4. Plaintiff does not contend he was forced out of his job indirectly; rather, Plaintiff's allegation is that he was told in no uncertain terms that his position was being eliminated and that his services would no longer be accepted by Monroe County starting in 2014. *Id.* Of course, discovery may reveal that Plaintiff left his job under circumstances far more voluntary than those alleged in his complaint. But at this stage in the litigation, the Court must accept Plaintiff's factual allegations as true and draw all reasonable inferences in his favor. *Bell Atl. Corp.*, 550 U.S. at 572. Furthermore, Plaintiff's burden of establishing a prima facie case of age discrimination is "*de minimis*." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466-67 (2d Cir. 2001) (citing *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203–04 (2d Cir.1995)). The Court therefore finds that Plaintiff has sufficiently alleged that he suffered an adverse employment action for the purpose of his ADEA and NYSHRL claims.

## II.   Compliance With New York County Law § 52

In relevant part, New York County Law § 52 provides that claims against a county "must be made and served in compliance with section fifty-e of the general municipal law" and that "[e]very action upon such claim shall be commenced pursuant to the provisions of section fifty-i

of the general municipal law." N.Y. County Law § 52(1).   General Municipal Law § 50-e requires plaintiffs to serve the defendant with a "notice of claim" within 90 days after the claim arises.  N.Y. Gen. Mun. Law § 50-e(1)(a).  General Municipal Law § 50-i requires plaintiffs to allege in the complaint that "at least thirty days have elapsed since the service of such notice . . . and that adjustment or payment thereof has been neglected or refused." N.Y. Gen. Mun. Law § 50-i(1)(b).

Under the well-established doctrine first announced in *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts are constitutionally obligated to apply state substantive law to state claims.  *See, e.g.*, *Felder v. Casey*, 487 U.S. 131, 151 (1988).  Because New York County Law § 52 is a notice-of-claim provision and acts as a substantive condition on the right to sue a New York county under state law, this Court is bound to apply it to Plaintiff's state law claims.  *Id.* at 151-52.  Notice of claim requirements such as New York County Law § 52 are strictly construed by New York state courts, and failure to comply with these provisions ordinarily requires dismissal. *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999).

Here, Plaintiff's Complaint makes no reference to filing a notice of claim with Monroe County, serving that notice on Monroe County, or waiting 30 days before filing suit.  *See* ECF No. 1.  Plaintiff therefore failed to comply with the pleading requirements in § 50-i.

More importantly, Plaintiff did not actually comply with the § 50-e notice of claim requirement.  Plaintiff did eventually file a notice of claim on August 6, 2014.  ECF No. 13-3, Ex. B.  However, given that Plaintiff retired on December 3, 2013, this notice was served well beyond the 90-day deadline.  The Deputy County Attorney rejected the notice of claim on August 15, 2014, citing the fact that it was not timely filed. ECF No. 13-4, Ex. C.

Although Plaintiff filed an EEOC Charge on January 24, 2014, which was within the 90-day deadline, Plaintiff has not offered any statutory support, case law, or substantive argument in

favor of the proposition that his EEOC Charge satisfies § 50-e. *Cody v. Cty. of Nassau*, 577 F. Supp. 2d 623, 649 (E.D.N.Y. 2008), *aff'd on other grounds*, 345 F. App'x 717 (2d Cir. 2009). Section 50-e contains specific provisions as to the form of the notice and manner of service, *see* N.Y. Gen. Mun. Law § 50-e(2)-(3), which lends credence to the idea that EEOC Charges in general are insufficient to satisfy § 50-e. *Wrenn v. New York City Health & Hosps. Corp.*, 104 F.R.D. 553, 557 (S.D.N.Y. 1985). Plaintiff does not allege that he served his EEOC Charge on Monroe County in accordance with § 50-e(3). *See Avgerinos v. Palmyra-Macedon Cent. Sch. Dist.*, 690 F. Supp. 2d 115, 127-28 (W.D.N.Y. 2010) (holding that even if an EEOC Charge could be considered a valid substitute to a notice of claim, plaintiff's failure to serve it on the defendant was fatal to plaintiff's state law claims). The EEOC Charge also fails to mention Plaintiff's age discrimination claim under the NYSHRL or Plaintiff's claim regarding his refusal to contribute to the Monroe County Republican Party, meaning that the EEOC Charge did not put Defendant on notice of those claims. *Id.* at 129. Therefore, even if an EEOC Charge could potentially satisfy § 50-e under certain circumstances, it fails to do so in this case. *Id.*; *see also Friel v. Cty. of Nassau*, 947 F. Supp. 2d 239, 247-48 (E.D.N.Y. 2013); *Meadors v. Ulster Cty.*, 984 F. Supp. 2d 83, 90 (N.D.N.Y. 2013).

Plaintiff also argues that this Court should grant him an extension of time to serve a notice of claim on Monroe County. ECF No. 16, at 4-7. General Municipal Law § 50-e(5) provides that "[u]pon application, the court, in its discretion, may extend the time to serve a notice of claim." N.Y. Gen. Mun. Law § 50-e(5). However, this argument fails for two reasons.

First, § 50-e(5) explicitly provides that "[t]he extension shall not exceed the time limited for the commencement of an action by the claimant against the public corporation." *Id.* Under County Law § 52 and General Municipal Law § 50-i(1)(c), actions against a county must commence within one year and 90 days after the claim arises. N.Y. County Law § 52(1); N.Y.

Gen. Mun. Law § 50-i(1)(c).  Despite the fact that Plaintiff's untimely notice of claim was rejected by Monroe County on August 15, 2014, *see* ECF No. 13-4, Ex. C, Plaintiff did not make this application until April 4, 2015, well after the statute of limitations period had expired.  ECF No. 16.  Even though Plaintiff commenced *this action* within the statutory period, New York courts have held that a motion for extension of time under § 50-e(5) may not be granted if *the application for extension of time* is not made until after the statutory period.  *See, e.g., Baker v. Cty. of Monroe*, 47 F. Supp. 2d 371, 375 (W.D.N.Y. 1999) ("No court has authority to extend the time for the proper filing of a late notice of claim after the one year statute of limitations has already run.") (citing *Davis v. City of New York*, 673 N.Y.S.2d 79, 80 (1st Dep't. 1998)); *Pierson v. City of New York*, 56 N.Y.2d 950, 954-55 (1982); *Wilson v. City Of Buffalo*, 747 N.Y.S.2d 657, 659 (4th Dep't. 2002).

Second, it is unclear whether federal courts even have jurisdiction to entertain applications for extensions of time under § 50-e(5).  Section 50-e(7) provides that "[a]ll applications under this section shall be made to the supreme court or to the county court" in the relevant county, but does not mention federal courts at all. Gen. Mun. Law § 50-e(7).  Although the Second Circuit has not ruled on this issue, *see Corcoran v. New York Power Auth.*, 202 F.3d 530, 540 (2d Cir. 1999), district courts in the Second Circuit have consistently held that they lack jurisdiction to consider such applications.  *See, e.g., Coleman v. City of Niagara Falls*, No. 09CV157S, 2010 WL 2869529, at *6 n.8 (W.D.N.Y. July 20, 2010); *Henneberger v. Cty. of Nassau*, 465 F. Supp. 2d 176, 200 (E.D.N.Y. 2006) (collecting cases).

Thus, because Plaintiff has failed to comply with New York County Law § 52, his state law claims must be dismissed.

**III.    Rule XXVII of the Monroe County Civil Service Commission**

Defendant argues that Plaintiff's claim under Rule XXVII of the Monroe County Civil Service Commission must be dismissed because Rule XXVII "does not establish a valid cause of action." ECF No. 13-5, at 11.  The Court need not reach this issue, because Plaintiff's state law claims are all dismissed for failure to comply with New York County Law § 52.

**CONCLUSION**

For the reasons stated above, Defendant's Motion for Judgment on the Pleadings (ECF No. 13) is GRANTED IN PART and DENIED IN PART.  Defendant's Motion is GRANTED with respect to Plaintiff's state law claims and DENIED with respect to Plaintiff's ADEA claim.

IT IS SO ORDERED.

Dated: March 8, 2016
         Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court